2026 IL App (1st) 260132-U

FIRST DIVISION
July 27, 2026

No. 1-26-0132

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* D.H., a Minor | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
|     Petitioner-Appellee, | ) | No. 24 JD 60080 |
|     v. | ) | |
| D.H., | ) | Honorable Darron E. Bowden, |
|     Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm respondent's adjudication of delinquency for the offense of first-degree murder. The evidence at trial did not support an adjudication of mitigated second-degree murder.

¶ 2    Minor-Respondent D.H. was adjudicated delinquent for the offenses of first-degree murder and aggravated battery with a firearm. The circuit court entered a dispositional order committing respondent to the Illinois Department of Juvenile Justice for a determinate period under the Juvenile Court Act (705 ILCS 405/5-750(2) (West 2024)). Respondent appeals the circuit court's judgment arguing that the evidence supported a conviction for second-degree murder rather than first-degree murder. For the reasons that follow, we affirm.

¶ 3                                   BACKGROUND

¶ 4       Minor-Respondent D.H. was 15 years old in July 2024 and was seeking to meet an older man for sexual relations. He self-identifies as bisexual. On July 4, 2024, he began a Snapchat conversation with Przemek Bogdanowicz, who used the handle "Gay Chicago Dad." Respondent initiated the conversation and indicated his interest in a meet-up. He informed Bogdanowicz that he was 18 years old, though he stated that he looked younger. Bogdanowicz was 46 years old at the time. Respondent expressed his desire to meet an experienced man for sex, and Bogdanowicz invited him to his home. Respondent declined, suggesting instead that they meet for sex in Bogdanowicz's car. He also asked Bogdanowicz to bring alcohol and marijuana.

¶ 5       The following day, on July 5, 2024, respondent and Bogdanowicz switched to text messaging and continued their conversation about meeting up. Respondent suggested a location a couple blocks from his house at an elementary school, and the meeting was set for that afternoon. Respondent brought a gun with him. When Bogdanowicz arrived, respondent got into the passenger seat. Within 30 seconds of respondent entering Bogdanowicz's car, Bogdanowicz was shot in the face with respondent's gun. The bullet entered near Bogdanowicz's eye and exited through the back of his head. Although Bogdanowicz lived for several hours after being shot, he was not conscious and he eventually died from the gunshot wound at the hospital.

¶ 6       At the adjudicatory hearing, respondent took the stand in his own defense. Due to the fact that Bogdanowicz was deceased, the only account of the events inside Bogdanowicz's vehicle came from respondent's testimony. Respondent began by confirming the details of the Snapchat and text message conversations he had engaged in with Bogdanowicz. The records of these communications were admitted into evidence at the hearing through stipulation.

¶ 7    Respondent explained that he had created the Snapchat account in order to better understand his sexuality. He stated that his intention was to be used for sex by an older man. Additionally, Respondent testified that he brought a gun with him when meeting Bogdanowicz, citing his need for protection since he was meeting a stranger.

¶ 8    When Bogdanowicz arrived at the designated location near the school, respondent entered the passenger seat of Bogdanowicz's vehicle. At that time, Bogdanowicz was concluding a phone call, so respondent waited for a brief period. Bogdanowicz smiled at respondent and moved the car forward slightly. After the phone call ended, Bogdanowicz again looked at respondent and smiled. According to respondent, this second smile appeared "creepy."

¶ 9    Respondent described Bogdanowicz's facial expression as simultaneously "disgusted, excited, and mad." During this interaction, Bogdanowicz complimented respondent by saying he was "pretty." Bogdanowicz then began to run his fingers through respondent's hair. Feeling uncomfortable and unsettled by this behavior, respondent told Bogdanowicz to stop touching his hair, repeating the request twice. Despite being asked to stop, Bogdanowicz continued his actions and stated that respondent needed to be punished for lying about his age.

¶ 10    Following this exchange, Bogdanowicz grabbed respondent's thigh. Respondent testified that this act caused him pain, as Bogdanowicz also squeezed part of his testicle during the contact. Respondent further stated that he considered Bogdanowicz's actions to be "weird."

¶ 11    Respondent then remembered that he had brought a gun with him which he had in the front pocket of his hoodie. Respondent testified that he thought if he just pointed the gun at Bogdanowicz, it would frighten him and respondent could get out of the car. Respondent took the gun from his hoodie pocket. Respondent testified that Bogdanowicz swiped at the gun and hit it, which caused the gun to go off. Respondent claimed that the gun had a "hair trigger" meaning

that the littlest touch of the trigger could cause it to fire. Respondent then put the gun back into his hoodie pocket, grabbed his backpack, and left the car.

¶ 12    Respondent fled to his dad's house and then called his grandmother to ask her to change his phone number. The next day, respondent's mom called and informed him that there was a warrant out for his arrest. Respondent's dad took him to the police station to turn himself in.

¶ 13    On cross-examination, respondent admitted that he could have gotten out of the car when the situation started to seem creepy to him. Respondent reiterated that the gun went off accidentally after Bogdanowicz hit it. Respondent also testified on cross-examination that he had never fired the gun but that he knew there was a problem with the trigger.

¶ 14    At the conclusion of the trial, the court determined that the shooting was not merely an accident, nor was it simply the result of a gun with a "hair trigger." The judge concluded that respondent's actions constituted a strong probability of causing death or great bodily harm to Bogdanowicz. Based on this determination, the court found respondent guilty of three counts of first-degree knowing murder under 720 ILCS 5/9-1(a)(2) (West 2024). In addition to the adjudications of delinquency for murder, the trial court found respondent guilty of aggravated battery with a firearm. After the sentencing hearing, the court committed respondent to the Illinois Department of Juvenile Justice for a determinate period, as outlined in the Juvenile Court Act (see 705 ILCS 405/5-750(a)(2) (West 2024)).

¶ 15    This appeal followed the trial court's findings and sentencing.

¶ 16                                  ANALYSIS

¶ 17    At trial, respondent testified the shooting was an accident caused when the victim struck respondent's gun which had a "hair trigger." On appeal, however, respondent argues that he should have only been found guilty of second-degree murder because he killed Bogdanowicz

while overcome by sudden, intense passion as a result of Bogdanowicz's initiation of a criminal sexual assault.

¶ 18    A person commits second-degree murder when he commits first-degree murder and, at the time of the killing, is acting under a sudden and intense passion resulting from serious provocation by the individual killed. 720 ILCS 5/9-2(a)(1) (West 2024). "Serious provocation" is conduct sufficient to excite an intense passion in a reasonable person. *Id.* at § (b). Illinois courts have recognized only a limited number of circumstances constituting serious provocation, including substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse. *People v. Garcia*, 165 Ill. 2d 409, 429 (1995).

¶ 19    When a defendant seeks mitigation to second-degree murder, he bears the initial burden of proving the mitigating factor by a preponderance of the evidence. If that burden is met, the State must then disprove the mitigating circumstance beyond a reasonable doubt. 720 ILCS 5/9-2(c) (West 2024). In reviewing a claim that a conviction should be for second-degree murder instead of first-degree murder, the court must determine whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the mitigating factors were not present. *People v. Blackwell*, 171 Ill. 2d 338, 357–58 (1996).

¶ 20    The record demonstrates that respondent failed to satisfy his initial burden. Throughout the adjudicatory hearing, respondent consistently maintained that the shooting was accidental. He testified that he removed the firearm solely to frighten the victim and facilitate his escape from the vehicle. Respondent did not present any evidence to show he killed Bogdanowicz as a result of a sudden and intense passion. Instead, respondent's own testimony was wholly dedicated to the notion that the killing was an accident caused by a highly sensitive trigger. Respondent maintained throughout his trial testimony that he took out the gun to scare

Bogdanowicz. Respondent never testified that he took out the weapon or fired it at Bogdanowicz because he was so overcome by emotion based on Bogdanowicz's actions.

¶ 21     At trial, respondent testified adamantly that he did not "shoot."

"[Assistant State's Attorney]: You're telling us it was an accident that the gun went off; is that correct?

[Respondent]: Yes, ma'am.

[ASA]: You never meant to shoot him, correct?

[Respondent]: Yes, ma'am.

[ASA]: That's what you're telling us?

[Respondent]: I never meant to shoot him. I didn't shoot. The gun went off. I never meant for that to happen."

This testimony is fundamentally inconsistent with a theory of second-degree murder. Second-degree murder presupposes an intentional or knowing killing constituting first-degree murder that is mitigated by the defendant's emotional state. By contrast, respondent's defense at trial was that no intentional shooting occurred at all. As Illinois courts have recognized, a claim of accidental discharge is incompatible with a claim that the defendant acted under a sudden and intense passion resulting from serious provocation. See *People v. Purrazzo*, 95 Ill. App. 3d 886, 893 (1981) (the defense of accident is not compatible with the "sudden and intense passion resulting from serious provocation" that is necessary to meet the statutory requirements for second-degree murder).

¶ 22     Respondent further argues that the victim's conduct amounted to criminal sexual assault and therefore constituted serious provocation. The record, however, contains no evidence of penetration, which is an essential element of criminal sexual assault under Illinois law. See 720

ILCS 5/11-1.20 (West 2024). Respondent testified only that the victim touched his hair, grabbed his thigh, and squeezed a portion of his testicle. Whatever the nature of that conduct, the evidence does not establish the offense of criminal sexual assault as defined by statute.

¶ 23    Moreover, even assuming *arguendo* that the victim's conduct could be characterized as offensive or unwanted, respondent introduced no evidence establishing that he intentionally fired the weapon because he was overcome by passion. The entirety of respondent's testimony attributed the discharge of the firearm to accident rather than emotion, anger, fear, or rage. Consequently, there was no evidentiary basis from which the trier of fact could conclude that respondent acted under the mitigating circumstances contemplated by section 9-2.

¶ 24    Viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude that respondent failed to prove the existence of a mitigating factor and that the State established respondent's guilt of first-degree murder beyond a reasonable doubt. Accordingly, the trial court properly rejected respondent's claim that the offense should be reduced to second-degree murder.

¶ 25    Accordingly, the adjudication of delinquency for first-degree murder is affirmed.

¶ 26                                CONCLUSION

¶ 27    For the foregoing reasons, we affirm.

¶ 28    Affirmed.